IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE VERIZON EMPLOYEE BENEFITS COMMITTEE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-476 Judge David S. Cercone |
| MICHAEL ADAMS | ) ) | Magistrate Judge Lisa Pupo Lenihan |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed by Defendant be denied.

### II. REPORT

This case involves the question of an ERISA plan's entitlement to a preliminary injunction to prevent dissipation of funds and the establishment of a constructive trust as to an alleged lump-sum pension benefit overpayment of approximately $231,000 made to a retiree-beneficiary as a result of the Plan's error.  Because, taking the evidence in the light most favorable to the Plaintiff, the Plan's Benefits Committee has sufficiently stated a claim (as to which material fact questions presently exist) for fiduciary entitlement to equitable relief under either § 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), or a federal common law analysis, Defendant's Motion to Dismiss should be denied.

A. **Statement of Facts and Procedural History**

The Verizon Pension Plan for Mid-Atlantic Associates (the "Plan") is a pension plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq. ("ERISA").[1] Defendant is a retired, life-long AT&T and Verizon employee with approximately 38 years of service, and a Plan participant and beneficiary. The Plan is administered by Plaintiff, The Verizon Employee Benefits Committee (the "Committee").

Defendant was employed by AT&T (and/or an AT&T affiliate) from November, 1965 through May, 2000. He was then employed by Verizon from June, 2000 to November, 2003. In October, 2003, Defendant and other employees in "surplus" positions were offered voluntary separation/early retirement incentives. See Motion to Dismiss, Exhibit B (Mid-Atlantic Associates Voluntary Separation - Fourth Quarter 2003 Enhanced Income Security Plan (EISP)).[2] In response to Defendant's inquiries regarding this offer, Verizon (through the Hewitt Management Company, LLC) repeatedly informed him that his lump sum pension benefit would be approximately $426,047.98. See id., Exhibit C (Pension Plan Pension Calculation Statement dated October 16, 2003).

On November 1, 2003, Plaintiff and his spouse made this election on the Pension Election Confirmation Statement provided by Verizon, and the funds (totaling $430,019.39),

---

1. The provisions of ERISA include the establishment of "standards of conduct, responsibility and obligation for fiduciaries of employee benefit plans." Id. at §1001(a)-(b).

2. The Report notes that the EISP lists the "pension benefit enhancements" available to individuals electing voluntary separation as a five (5%) percent pension band increase, a lump sum distribution option with a "more favorable interest rage calculation" and ability to defer receipt. Id. at p. 3.

drawn on a account held by/titled in Verizon Benefits Center, were deposited to Defendant's Solomon Smith Barney IRA on January 1, 2004. See Motion to Dismiss, Exhibits D & F.[3] Plaintiff makes no factual assertion that these funds have been disbursed, but does allege that they were comingled with other funds and that investment losses and gains subsequently occurring in Defendant's IRA account cannot be attributed to particular monies deposited. See Brief in Support of Motion to Dismiss at 10 (noting that the funds have been "co-mingled with other retirement funds which have, as an undifferentiated aggregate, generated gains and losses" and that, when he reached age 59-1/2 in the fall of 2004, Defendant "would have been eligible to draw on his IRA account").

Plaintiff now asserts that the lump sum calculation was an "administrative error", as it did not properly account for/offset a prior lump sum distribution to Defendant from his AT&T pension plan in June, 2000 in the amount of $183,391.01. Plaintiff contends that, under the terms of the Mid-Atlantic Plan, Defendant was only entitled to receive a pension distribution of

---

3. Adams attests that he assessed his early retirement option and accepted Verizon's offer on the basis of its repeated representations of the lump sum pension benefit he would receive at that time. See Brief in Support of Motion to Dismiss at 4.

Defendant also suggests that, because the check was issued by Verizon, "it is not at all clear that the funds were even distributed from the Plan." Brief in Support of Motion to Dismiss at 11. While this may raise an issue of material fact appropriate to summary judgment, it is sufficient for now that Plaintiff expressly alleges that Defendant received "an overpayment of pension benefits from the Verizon Pension Plan" and "received a lump-sum pension distribution . . . from the Mid-Atlantic Plan", and that the claim is brought by the Plan fiduciairy. Complaint at pp.1-2.

$198,851.49 (and not $430,019.39) upon early retirement from Verizon.  See Complaint at 2 and Exhibit A.[4]

There is no indication in the pleadings of how these errors in benefit calculations for Defendant and other employees electing early retirement came to the Plan's attention, but by letter of September 6, 2005 (*i.e.*, almost two years later), an employee in Verizon's pension department notified Defendant of its asserted $231,167.90 overpayment and requested that the entire sum (*i.e.*, more than one-half the amount previously represented to be Defendant's early retirement benefit) be "repaid" to the Plan.  Defendant did not comply.

In late 2006, Plaintiff filed Complaints against Defendant Adams (as it has filed against other retirees) in the District Court for the Northern District of Texas, in which district the Plan is administered.[5]  On Defendant's Motion, this case was transferred in accordance with 28 U.S.C. § 1404(a) to this District, in which Defendant resides, by Order of April 2, 2007.  See Plaintiff's Memorandum in Opposition at 1.  As noted above, the Complaint alleges an administrative error in the calculation of Defendant's lump sum early retirement distribution for which Plaintiff

---

4. The Report notes that Plaintiff's September 2005 correspondence indicates that, under the terms of the Plan, a benefit calculated using Defendant's combined Verizon and AT&T service (which Defendant "ported") was to be "reduced to reflect the actuarial equivalent of the lump sum benefit" paid from the AT&T pension plan.  Exhibit A at 1.

5. See, *e.g.* Verizon Employee Benefits Committee v. Frawley, 05-CV-2105 (N.D. Tex.) (attachment to Plaintiff's Citation of Additional Authority).  In Frawley, the Court implicitly acknowledged the fidiciary's entitlement to an action under § 502(a)(3), but went on to explicitly construe it, for purposes of determining the applicable statute of limitations, as an action for money had and received subject to a four-year statute.  This Report does not concur with that construction of the action.  Compare Verizon Employee Benefits Committee v. Heinlein, WDQ-06-3022 (N.D. Md.) (attachment to Defendant's Brief in Reply) (granting defendant employee's motion for summary judgment and construing the action as one for unjust enrichment barred under Maryland's three year statute of limitiations).

asserts entitlement to "recover specifically identifiable funds paid by the . . . Plan . . . that are in [Defendant]'s possession and control . . . ." Complaint at 3.[6] And the Plan Committee seeks a preliminary injunction and "appropriate equitable relief to enforce the . . . Plan's terms". Id.[7] It further asserts it is "entitled to impose a constructive trust on the . . . overpayment" and "to receive equitable restitution in the same amount to recoup the assets that belong in good conscience" to the Plan. Id.

Defendant's Motion to Dismiss for failure to state a claim under Rule 12(b)(6) or lack of subject matter jurisdiction under Rule 12(b)(1), asserts that (a) Plaintiff may not bring a claim under § 502(a)(3) where it has not alleged a violation of ERISA or the Plan, and (b) the Complaint seeks relief that is not equitable and so not cognizable under § 502(a)(3). In response to Plaintiff's Memorandum in Opposition to the Motion to Dismiss, Defendant further asserts that Plaintiff cannot, in the alternative, state a claim for equitable restitution under federal common law. Defendant suggests that he will be asserting a counter-claim for breach of fiduciary duty/ failure to exercise the care of a "reasonably prudent person", as required by

---

6. ERISA provides several statutory rights of action. Among them, § 502(a)(2) enables a participant, beneficiary or fiduciary to bring a derivative action to obtain plan-wide relief for a breach of fiduciary duty; while § 502(a)(3) enables a participant, beneficiary or fiduciary to enforce the provisions of ERISA and/or the plan documents. More specifically, § 502(a)(3), permits beneficiaries and fiduciaries to bring suit to "(A) enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan."

7. As discussed in this Court's opinion in Kaliszewski v. Sheet Metal Workers National Pension Fund, 2005 U.S. Dist. LEXIS 23059 (W.D. Pa. July 19, 2005), the Supreme Court's decision in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), began a great deal of litigation as to what constitutes "appropriate equitable relief" under § 502(a)(3).

ERISA, with regard to his benefits.[8]  Cf. Brief in Support of Motion to Dismiss at 11-12 (asserting that Adams relied on Verizon's repeated representations in deciding to retire at age 58 rather than age 65 and that Adams significantly and detrimentally changed his position on its early retirement pension benefit calculation); Griggs v. E.I. DuPont de Nemours & Co., 385 F.2d 440 (4th Cir. 2004) (discussing equitable relief available to employee who took early retirement in reliance on employer's negligent misrepresentation of tax consequences, including possible reinstatement or other restoration to the *status quo ante*).

### B. Motion to Dismiss Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court should grant a motion to dismiss when a complaint fails to set forth sufficient facts to state a claim to relief that is plausible on its face.  See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (May 21, 2007).[9] In deciding a Motion to Dismiss, the Court may consider documents integral to or explicitly relied upon in the Complaint.  See, *e.g.*, Rea v. Hershey Co. 2005 Enhanced Mut. Separation

---

8.  See Brief in Support of Motion to Dismiss at 8.  Cf. Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 152-53 (1985) (Brennan, J., concurring) (noting that "Congress intended . . . to incorporate the fiduciary standards of trust law into ERISA, and it is black-letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits").  The fiduciary duty owed by ERISA administrators and trustees is founded in negligence principles and requires these individuals/entities to discharge their duties so as, at a minimum, to cause no harm to the beneficiary as a result of a failure to exercise reasonable care.  See Phillips v. Maritime Association-I.L.A. Local Pension Plan, 194 F.Supp.2d 549, 556 (E.D. Tex 2001);  See also 29 U.S.C. § 1104(a)(1).

9.  The Report notes that although there is some question as to the scope of applicability of Twombly's abrogation of the standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), it would reach the same conclusion under either standard.  Compare 355 U.S. at 45-46 (holding that complaint should be dismissed for failure to state a claim where it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief).

Plan, 2007 U.S.Dist. LEXIS 17783 (M.D. Pa. 2007); In re Burlington Coat Factory, 114 F.3d 1410, 1426 (3d Cir. 1997).

## C. Analysis

Defendant asserts that Plaintiff's claims are barred because it has not alleged a violation of ERISA or the Plan as required to maintain an action under § 502(a)(3) and it does not seek the equitable relief to which it is restricted under § 502(a)(3). Defendant further asserts that Plaintiff's claims are barred because it is not entitled to relief under federal common law in the alternative.

### 1. Fiduciary's Claim Under § 502(a)(3)

Defendant errs in its initial assertion that a plaintiff fiduciary must assert a violation of ERISA or an ERISA benefit plan to state an action under § 502(a)(3). To the contrary, as is self-evident in the language quoted by Defendant, § 502(a)(3) also authorizes an action by a fiduciary "to enforce any provisions" of ERISA or a qualified plan. See Brief in Support of Motion to Dismiss at 6 (quoting Peacock v. Thomas, 516 U.S. 349, 353 (1996)). See also Kaliszewski. *supra*. The Plan at issue is alleged to require an offset for the "actuarial equivalent" of Defendant's distribution from the AT&T Plan, and to contain express provisions authorizing actions for recoupment in the event of error. See Memorandum in Opposition at 7-8. The Plan administrator may, therefore, bring an action for enforcement under § 502(a)(3). See The Verizon Employee Benefits Committee v. Heinlein, 2006 U.S. Dist. LEXIS 81814 (N.D. Tex. Nov. 8, 2006). Cf. Sereboff v. Mid Atl. Med. Servs., 126 S.Ct. 1869 (2006) (concluding that suit for equitable relief under § 502(a)(3) was authorized where plan permitted fiduciary to recoup medical expense benefits paid and later recovered from third party).

The Plan's relief is, however, as Defendant asserts and Plaintiff does not dispute, limited to equitable - as opposed to legal - relief.   More particularly, as discussed in this Court's decision in Kaliszewski, § 502(a)(3) permits "those categories of relief that were typically available in equity" and does not encompass *legal* restitution, defined as being at issue where "the plaintiff 'could not assert title or right to possession of particular property, but . . . nevertheless . . . might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him.'" [10]

To establish an equitable recovery under § 502(a)(3), a plaintiff fiduciary must show, therefore, that it is seeking to recover property that (1) is specifically identifiable; (b) belongs in "good conscience" to the plan; and (3) is within the possession and control of the defendant.  See

---

10.  See also Great-West Life (further explaining that "[i]n such cases, the plaintiff's claim was considered legal because he sought 'to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money'") (quoting Restatement of Restitution § 160, comment a, pp. 641-42 (1936)).

See generally, *e.g.*, Cooperative Benefit Administrators, Inc. v. Ogden, 367 F.3d 323 (5th Cir. 2004) (observing that § 502(a)(3), as interpreted by the Supreme Court, reflects a Congressional intent to limit fiduciaries' remedies to "categories of relief . . . typically available in equity" and does not permit their action for monetary damages); Leipzig v. AIG Life Ins. Co., 362 F.3d 406, 409 (7th Cir. 2004) (concluding that court had no federal jurisdiction over administrator's counterclaim as pled under § 502(a)(3) because "as a rule, a demand for reimbursement is a request for money damages and is therefore legal"); Honolulu Joint Appenticeship v. Foster, 332 F.3d 1234 (9th Cir. 2003) (holding that fund had no remedy of reimbursement, in part because there was no identifiable res of money); Sheet Metal Local #24 Anderson, Trustee v. Newman, 2002 WL 1033739 (6th Cir. 2002) (same); Greenes v. Adornato, 2004 WL 213089, *1 (S.D.N.Y. Feb. 4, 2004) (holding that pension fund could not sue plan participant for return of monies trust improperly paid to him "pursuant to several remedies the [fund] characterize[d] as 'equitable'" if the defendant had dissipated the funds).  Michaels v. Breedlove v. Congress Financial Corp., 2004 WL 2809996, *1-2 (3d Cir. Dec. 8, 2004) (discussing non-availability of legal restitution under § 502(a)(3) and distinguishing equitable restitution seeking "recovery of money or property which 'could clearly be traced to particular funds or property in the defendant's possession'") (quoting Great-West Life, 534 U.S. at 213).

Brief in Support of Motion for Summary Judgment at 9 (citing Unum Life Ins. Co. of Am. v. Grourke, 406 F.Supp.2d 524, 528 (M.D. Pa. 2005); see also Kaliszewski, *supra* (citing Great-West Life's definition of equitable restitution as "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession"). While it is certainly *not* sufficient to the first and third factors that the Plan state the sum certain allegedly overpaid to the Defendant beneficiary,[11] it is sufficient at this Motion to Dismiss stage of the litigation that it maintain that those funds were paid into and remain in a particular IRA account in Defendant's possession and control. The extent to which those funds were and/or remain "specifically identifiable" almost four (4) years later raises, of course, questions of material fact.

Similarly, Plaintiff has sufficiently alleged that the funds "belong in good conscience to the Plan", as required by the second factor, where it asserts that Defendant was unentitled to the distribution under either the Plan or the terms of his early retirement, and that it made an overpayment purely as a result of Plan administrative error. Whether the equities ultimately weigh in favor of a constructive trust over any specifically identifiable property raises, again, questions of material fact.[12] Cf. Memorandum in Opposition at 10 (asserting, correctly, that Adam's fact-based, equity-based rejoinders to the claims "must be rejected . . . at this early stage of the proceedings"). Cf. also New England Mutual Life Ins. Co. v. Hastings, 733 F.Supp. 516

---

11. See Memorandum in Opposition at 9 (asserting that the Complaint "clearly meets the first prong of the three-part test" because it seeks a "constructive trust on specifically identifiable funds, *i.e.*, the $231,167.90 which was overpaid to Adams").

12. Cf. Admin. Comm. of the Wal-Mart Assoc. Health & Welfare Plan v. Willard, 393 F.3d 1119,1122 (10th Cir. 2004) (noting presence of express reimbursement provisions as a factor in determinations of whether disputed funds belong in good conscience to the plan).

(D.R.I. 1990) (concluding, after bench trial, that it would be inequitable to require former employee to remit mistaken pension distribution where "the amount of money that [employee was to] receive as a payout from his pension plan was a critical factor in his determination as to whether he could afford to leave his job").

### 2. Fiduciary's Claim Under Federal Common Law

As this Report concludes Plaintiff is entitled, under the appropriate preliminary standards, to maintain the claim it brings, *i.e.*, one for equitable relief under § 502(a)(3), it need not rely on Plaintiff's asserted alternative entitlement to a claim under federal common law. The Report notes, however, that Defendant errs when he suggests that this Court concluded in Kaliszewski that a fiduciary may not maintain an action to recover a benefit overpayment under federal common law within the Third Circuit. To the contrary, this Court opined, after extensive analysis, that the Third Circuit's extension of a federal common law cause of action for unjust enrichment to ERISA fiduciaries - as recognized in Luby v. Teamsters Health, Welfare and Pension Trust Funds, 944 F.2d 1176, 1186 (3d Cir. 1991) - was cast into question by the Supreme Court's subsequent decisions in Mertens v. Hewitt Assocs., 508 U.S. 248, 257-58 (1996), and Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214 (2002). It expressly noted, however, that it was unnecessary to resolve the question further. See Kaliszewksi, *supra* ("This Court brings these concerns to the parties attention, but need not resolve these questions at this summary judgment stage because, as discussed *infra*, even if a right of recovery in the fiduciary exists, it turns on equitable factors as to which there are

genuine issues of material fact.").[13]  The Third Circuit has not since spoken to this issue.  Cf. Unum Life Ins. Co. of Am. v. Grourke, 406 F.Supp.2d 524, 528 (M.D. Pa. 2005) (concurring with the analysis of Kaliszewski).[14]

The Report further notes that, if Plaintiff were entitled to proceed under a federal common law theory, its entitlement to recovery would be similarly governed by general equitable principles.  See Luby, 944 F.2d at 1186.  That is, while a Plan's negligence in making a mistaken payment does not, in itself, bar restitution, the Court considers various factors, such as the fiduciary's culpability and the extent of the beneficiary's reliance on erroneous pension information and payments, in weighing  the equities of restitution in the particular case. See, *e.g.*, See Phillips v. Maritime Association-I.L.A. Local Pension Plan, 194 F.Supp.2d 549, 555 (E.D.Tex. 2001) (citing Luby for its holding that "while fault does not necessarily preclude restitution, a party's culpability is an appropriate equitable consideration").[15]  The common law

---

13.  See Kalizewski, *supra* (citing Cooperative Benefit Administrators, Inc. v. Ogden, 367 F.3d 323 (5th Cir. 2004) and noting that, in Ogden, the Fifth Circuit drew an important distinction between a federal common law right in *employers*, who are not provided any relief under § 502(a)(3), and *fiduciaries*, who are); id. (citing to the Sixth Circuit's and Eighth Circuit's similar reformation of their prior positions that federal common law provided a basis for a fiduciary's reimbursement claim in Qualchoice, Inc. v. Rowland, 367 F.3d 638, 642 (6th Cir. 2004) and North American Coal Corp. v. Roth, 395 F.3d 916, 917-18 (8th Cir. 2005)).

14.  Plaintiff's assertion that the Supreme Court's decision in Sereboff v. MidAtlantic Medical Services, Inc., 126 S.Ct. 1869 (2006), a § 502(a)(3) action, affects this Court's Kaliszewski federal common law analysis is mistaken.  See Memorandum in Opposition at 13, n. 3.

15.  In Phillips, the District Court observed that "[w]hen applying an equitable doctrine for purposes of recoupment, it is critical to consider the circumstances surrounding the overpayments."  194 F.Supp.2d at 555.  It considered "the breach of fiduciary duty by [Defendant], the Plaintiffs' resulting change of position, the balance of equities, and the principles of restitution . . . ."  Id.  Evaluation of  "the equities in [the] case and ERISA's guiding principles . . . led the court to conclude that restitution [was] not an appropriate remedy."  Id. See also Adams, 2005 WL 1330682 (explaining that fiduciary breached its duty by materially
(continued...)

of trusts under the Restatement (Second) of Trusts, § 254, invokes similar equitable considerations.[16] The Report also notes the general applicability of the doctrine of laches to equitable claims.[17]

---

15.  (...continued)
misleading plan participant as to pension benefits, regardless of whether its statements or omissions were made negligently or intentionally, and considering negligence among factors in determining equitable resolution regarding benefit overpayments) (citing Krohn v. Huron Mem'l Hosp., 173 F.3d 542, 547 (6th Cir. 1999)).  In holding that it would not require the employee to return excess payments made prior to discovery of the administrative error, the Adams Court noted that the beneficiary had no role in the miscalculation of his retirement benefits, that the entire blame lay on the plan and the employees entrusted with that task, and that the evidence showed "careless inattention to detail" in the administration of the plan.

   Determination of a right to, as well as the extent of, recoupment in such case is for the Court.  See Airco Industrial Gases, Inc. v. Teamsters Pension Trust Fund of Philadelphia, 668 F.Supp. 893, 894 n. 1 (D. Del. 1987) (stating that "fact of mistake . . . permits . . . Court to determine the question of restitution"); Luby, 944 F.2d at 1179 (noting that district court concluded Fund was entitled to restitution from payee following bench trial).

16.   See § 254, comment d (providing an exception to general rule of trustee's entitlement to recoup overpayment from one of several beneficiaries where "beneficiary had no notice that he was overpaid and has so changed his position that under all the circumstances it is inequitable  to the beneficiary to permit such recovery").  Indeed, the Restatement identifies the following factors "of importance in determining whether it is inequitable to allow the trustee indemnity": (1) what disposition the beneficiary has made of the overpayment; (2) the overpayment amount; (3) the nature of the trustee's mistake, *e.g.*, negligence; and (4) the time elapsed since the overpayment was made. See id.  Finally, it provides that "the trustee may be denied indemnity or the court may permit" timed recoupments from trust income accruing to the beneficiary.  Cf. King v. Railroad Retirement Bd., 981 F.2d 365 (8th Cir. 1992) (noting that although Railroad Retirement Board had express statutory authorization to recover erroneous excess benefit payments at any time, recovery might be waived where beneficiary was without fault and recovery would be against equity).   Cf. also John H. Langbein, *What ERISA Means by "Equitable"*, 103 Col. L. Rev. 1317 (2003) (proposing that remedy of make-whole relief available under common law of trusts be available as equitable relief under § 502(a)(3) claim for breach of fiduciary duty).

17.   See Gruca v. U.S. Steel Corp., 495 F.2d 1252, 1258 (3d Cir. 1974) (noting that, as it is an equitable doctrine, the decision to apply laches is left to the discretion of the district court). Latches arises when a defendant's position is so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be injustice to permit the assertion of
(continued...)

### III. CONCLUSION

For the reasons set forth above, it is recommended that the Defendant's Motion to Dismiss be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

LISA PUPO LENIHAN
United States Magistrate Judge

Dated: October 11, 2007

---

17. (...continued)
a claim against him. See, *e.g.*, Burke v. Gateway, 441 F.2d 946, 949 (3d Cir. 1971); Jacobs v. Halloran, 710 A.2d 1098, 1102 (1998).